# UNITED STATES DISTRICT COURT

for the

Northern District of Texas

JAN 2 7 2020

CLERK U.S. DISTRICT COURT

By: _____
Deputy

| In the Matter of the Search of | | |
|---|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) | Case No. 4:20-MJ- *046* |
| LG MODEL STYLO 5, BLUE AND BLACK IN COLOR, WITH IMEI: 355692100410864 AND AN ANDROID MODEL QS5509A, BLACK IN COLOR, WITH SERIAL NUMBER 07A80760, CURRENTLY LOCATED AT 125 E. JOHN CARPENTER FWY., IRVING, TEXAS | ) ) ) ) ) | **[FILED UNDER SEAL]** |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

LG model Stylo 5, blue and black in color, with IMEI: 355692100410864 and an Android model QS5509A, black in color, with serial number 07A80760, located at 125 E. John Carpenter Fwy., Irving, TX, as described in Attachment A.

located in the _____Northern_____ District of _____Texas_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) & (b)(1)(C) | Possession of a Controlled Substance with Intent to Distribute. |

The application is based on these facts:

See attached Affidavit.

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

**Rudy Lara, HSI Special Agent**
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __1/27/2020__

_____
*Judge's signature*

City and state: Fort Worth, Texas

**Jeffrey L. Cureton, U.S. Magistrate Judge**
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF AN LG MODEL STYLO 5, BLUE AND BLACK IN COLOR, WITH IMEI: 355692100410864 AND AN ANDROID MODEL QS5509A, BLACK IN COLOR, WITH SERIAL NUMBER 07A80760, CURRENTLY LOCATED AT 125 E. JOHN CARPENTER FWY., IRVING, TEXAS | Case No. 4:20-MJ-_____ |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, **Rudy Lara**, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent of the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) having worked for that agency since September 2009.  I am currently assigned to the HSI Office of the Special Agent in Charge (SAC), Dallas, Texas, National Gang Unit.  During nearly eight years of experience as a federal law

enforcement officer I have been involved in numerous gang investigations. I am Title 21 cross-designated in accordance with the Memorandum of Understanding between ICE and the Drug Enforcement Administration (DEA). I have training and experience in surveillance, the execution of search and arrest warrants, Title III investigations, large scale drug trafficking investigations, and the debriefing of defendants, informants, and witnesses.

3.      Based on training and experience, as well as based upon interviews with defendants, informants, and other witnesses and participants in narcotics offenses, I am familiar with ways that individuals who distribute narcotics employ electronic communication via text message, email, internet, and social media to facilitate certain activities.

4.      I also know that subjects engaged in narcotics offenses often have evidence of such offenses on their cell phones, such as, but not limited to: photographs and videos displaying the subject in possession of narcotics, as well as text messages, emails, and records showing the illegal purchase, possession, transfer, and sale of narcotics. Individuals involved in narcotics offenses commonly use cellular telephones to transmit and receive information via voice calls, text messages, e-mail, and direct-connect capabilities in furtherance of their narcotics offenses.

5.      It is common for individuals engaged in narcotics offenses to store, electronically, on their cellular telephones: (1) contact lists; (2) records of sent and

received voice calls; (3) records of sent and received text messages; (4) records of sent and received direct-connect calls; (5) records of sent and received e-mails; and (6) records of sent and received photographs and videos. This information often contains evidence of narcotics offenses, including evidence of the illegal purchase, possession, sale, and transfer of narcotics.

6.      Affiant knows, through training and experience, that individuals who engage in narcotic offenses often acquire replacement cellular telephones after an arrests by law enforcement, in which the electronic device was seized. Similarly, Affiant knows, through training an experience that the aforementioned subjects often resume and/or further commensurate their illegal activity on replacement cellular telephones.

7.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. Based on my training, experience, and the facts set forth in this affidavit, there is probable cause to believe that **Armando Silva** violated Title 21, United States Code, § 841(a)(1) and (b)(1)(C), by possessing a controlled substance with intent to distribute, to wit: Methamphetamine. There is also probable cause to search the information described in Attachment A for evidence of these crimes as described in Attachment B.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

8.      The property to be searched is an LG model Stylo 5, blue and black in color, with IMEI: 355692100410864, and an Android model QS5509A, black in color,

3

with serial number 07A80760, hereinafter the "Devices." The Devices were seized from **Armando Silva** and are currently located at 125 E. John Carpenter Freeway, Irving Texas.

9.     The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

10.     Since October 2019, HSI Gang Unit agents, including myself, have been investigating **Armando Silva** (DOB 7/10/1994) a documented Dimond Hill street **gang** member, relating to illegal trafficking of methamphetamine. I have received credible information from two confidential sources that **Silva** has been distributing methamphetamine in the Fort Worth, Texas, area.

11.     On December 22, 2019, Sansom Park Police Department (SPPD) officers conducted surveillance in reference to narcotic sells at a residence located on the 5800 block of Waddell Street, Sansom Park, Texas.

12.     Officers observed a white SUV bearing Texas license plate number KGB9856 leaving the abovementioned residence. The driver was later identified as **Armando Silva** (DOB 7/10/1994). While operating the vehicle, Officers witnessed **Silva** complete a traffic infraction. Shortly thereafter, SPPD Officers in marked patrol units

4

conducted a traffic stop of the white SUV and **Silva** was detained. During the course of an ongoing investigation, your affiant has witnessed Silva operating the above-mentioned white SUV on several occasion.

13.     As officers made contact from the passenger side, officers noticed a light odor of marijuana emitting from the vehicle. Officers asked **Silva** and the passenger how much marijuana was in the vehicle, and they stated there could be some marijuana in the vehicle. **Silva** stated to officers there was a handgun between the driver-side seat and the center console as well as four Xanax pills. For officer safety, both the driver and the passenger were asked to step out of the vehicle. A search of the vehicle was conducted, and officers found a Taurus handgun. Officers also found four small Xanax pills in a small clear baggie within the top of the center console.

14.     A database search indicated that **Silva** had an outstanding warrant for his arrest out of Fort Worth Police Department for Unauthorized Use of a Motor Vehicle. **Silva** was arrested for the outstanding warrant. In addition, a criminal history search revealed that Silva had a prior 2012 State Jail Felony conviction for possession of a controlled substance out of Tarrant County, which would prohibit him from possessing the aforementioned Taurus handgun.

15.     Officers asked **Silva** if he had anything else on him since he was going to jail at that point, and he did not want him to get another charge. **Silva** admitted to having over an ounce of Methamphetamine on his person. **Silva** then reached into his underwear

5

area and pulled out a small baggie of what Officers knew to be methamphetamine and another small baggie of marijuana. **Silva** then pulled out a much larger baggie with methamphetamine from the same area in his pants. **Silva** stated the gun, Xanax, and methamphetamine were left in the vehicle by a female named "Melony" who lives in the 5800 block of Waddell (the aforementioned residence). **Silva** also stated there was more Xanax and methamphetamine inside the main residence, closest to the road.

16.    Ultimately, **Silva** was arrested by SPPD, charged with possession of a Controlled Substance PG 1 >= < 4G<200G, and transported to Sansom Park city jail. The evidence was weighed with the following results: the large bag containing methamphetamine weighted 27.6 grams, the small bag containing methamphetamine weighted 4.7 grams, the small bag containing marijuana weighted 5.5 grams, and there were a total of four (4) Xanax pills. The total weight of the methamphetamine was 32.3 grams, which is 1.14 ounces.

17.    Based on my training and experience, the amount of methamphetamine and they way it was packaged is indicative of methamphetamine trafficking.

18.    Further investigation into **Silva's** criminal history revealed an April 4, 2019 arrest by Boyd TX Police Department (BPD) for Man/Del Pg1>=4g<200g.

19.    On or about April 4, 2019, at approximately 0227 hours, a BPD K9 officer initiated a traffic stop on a 2013 Chevrolet Suburban. The stop was a result of a data base check that indicated **Silva's** Texas drivers license was "not eligible" with multiple active

6

suspensions. The BPD K9 officer used **Silva's** drivers license photo to confirm that **Silva** was in fact the driver of the Suburban.

20.    The BPD K9 Officer activated the patrol vehicle's emergency lights, and conducted a traffic stop in the 500 block of West Rock Island Avenue. The BPD officer then made contact with the occupants of the above vehicle. The driver identified himself verbally as **Silva, Armando** (H/M, DOB 07/10/1994) and the passenger also identified himself verbally.

21.    While speaking with both subjects, the BPD officer observed the odor of Marijuana emitting from the above vehicle. **Silva** was directed out of the vehicle and a Marijuana grinder was observed in the driver door's storage panel as well as a fixed blade knife with no sheath in the driver's floorboard.

22.    **Silva** was then detained with handcuffs and admitted to a Marijuana pipe and half of a smoked Marijuana blunt inside of the vehicle. The BPD officer then had the passenger exit the vehicle and detained him with handcuffs as well. The BPD officer informed both occupants that the above vehicle would be searched. Both subjects protested and **Silva** admitted that he had a Methamphetamine pipe as well somewhere inside the vehicle.

23.    During the subsequent search, the following items were found:

    a. Driver's floorboard- multicolored Marijuana pipe containing unburnt Marijuana

    b. Center console- Multiple empty 4inx4in plastic bags, (1) 4inx4in plastic bag containing Marijuana, Digital scales with Methamphetamine residue, Torch lighter, and various Marijuana paraphernalia,

    c. Center console storage areas- (1) digital scale, partially smoked Marijuana blunt

    d. Glove compartment- Numerous 4inx4in empty plastic bags, some inside original "apple bags" plastic bag, Marijuana cigarette rollers, Packages of rolling papers,

    e. Front passenger floorboard- Package of rolling papers,

    f. Driver's seat rear storage pocket- (1) Methamphetamine pipe,

    g. Underneath driver's seat and emerging into floorboard- Cylindrical cloth bag containing (1) large sandwich bag containing Methamphetamine, (1) 4inx4in bag containing Methamphetamine, (1) 4inx4in bag containing Marijuana, (1) 4inx4in bag containing Alprazolam pills.

24. No occupant would claim the illegal contraband and **Silva** later claimed ownership of the narcotics.

25. During the booking process, the BPD officer weighed the 4inx4in bag of Methamphetamine using a digital scale and observed an aggregate weight, including packaging, of 29.8 grams. The large sandwich bag of Methamphetamine was weighed using a digital scale and displayed an aggregate weight, including packaging, of 73.3 grams. Both bags of methamphetamine, weighed simultaneously, displayed an aggregate weight, including packaging, of 103.1 grams, which is 3.63 ounces.

26. Considering the information received from the CIs, the quantity and the manner in which the methamphetamine was packaged, the discovery of the scales and 4inx4in baggies, and based on my training and experience, the evidence seized is indicative of methamphetamine trafficking.

27. The Devices are currently in the lawful possession of HSI. They came into **HSI**'s possession in the following way: On January 15, 2020, HSI agents executed a

federal warrant for Silva's arrest. Silva was encountered during a traffic stop after leaving his residence. Silva was found in possession of 128 Alprazolam pills with a total weight of 35.17 grams, drug paraphernalia, digital scale, and two cell phones. HSI agents seized the devices incident to the arrest. Therefore, while the HSI might already have all necessary authority to examine the Devices, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Devices will comply with the Fourth Amendment and other applicable laws.

28.     The Devices are currently in storage at 125 E. John Carpenter Freeway, Irving, Texas, Suite 800.  In my training and experience, I know that the Devices have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of HSI.

## TECHNICAL TERMS

29.     Based on my training and experience, I use the following technical terms to convey the following meanings:

  a. Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless

telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

d. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash

11

memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

e.  Tablet:  A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen.  Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise.  Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions.  Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

f.  IP Address:  An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and

12

directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

30.     Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at https://www.lg.com/us/cell-phones/lg-q720cs-cricket-stylo-5 and https://www.att.com/devicehowto/index.html#!/devicediagram?make=ATT&model=QS5 509A, I know that the Devices have capabilities that them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

13

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

31.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

32.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used them, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

  a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

  b.  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

14

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f. I know that when an individual uses an electronic device to communicate, arrange, plan, or complete narcotics transactions, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a

15

means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

33.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Devices to human inspection in order to determine whether it is evidence described by the warrant.

34.    *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

Based on the foregoing, I submit that this affidavit supports probable cause that **Armando Silva** violated Title 21, United States Code, § 841(a)(1) and (b)(1)(C), by possessing a controlled substance with intent to distribute, and that evidence of the crimes as described in Attachment B will be found on the Devices described in Attachment A. Therefore, I request a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Rudy S. Lara
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me on January, **27** 2020, at **1:33** am / pm in Fort Worth, Texas.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

17

## ATTACHMENT A

The property to be searched is an LG model Stylo 5, blue and black in color, with IMEI: 355692100410864, and an Android model QS5509A, black in color, with serial number 07A80760, hereinafter the "Devices." The Devices were seized from Armando Silva and are currently located at 125 E. John Carpenter Freeway, Irving, Texas.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

**Attachment A**

## ATTACHMENT B

1.      All records on the Devices described in Attachment A that relate to violations of 21, United States Code, § 841(a)(1) and (b)(1)(C) and involve **Armando Silva** since January of 2019, including:

      a.   lists of customers and related identifying information;

      b.   types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

      c.   any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

      d.   any information recording schedule or travel from January of 2019 to the present;

      e.   all bank records, checks, credit card bills, account information, and other financial records.

2.      Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

**Attachment B**